# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XIAO-YING YU, | * |
| Plaintiff | * |
| v. | *    CIVIL NO. JKB-17-3260 |
| DENNIS SCHRADER, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM

Plaintiff Xiao-Ying Yu was fired from the Maryland Department of Health, Center for Chronic Disease Prevention and Control ("CCDPC") on November 3, 2014. Just over three years later, she filed this lawsuit, *pro se*, on November 6, 2017, naming as Defendants the Secretary of the Maryland Department of Health,[1] and the Secretary of the Maryland Department of Budget and Management. She alleged, essentially, that she was discriminated against and retaliated against when she worked at CCDPC. Defendants moved to dismiss on January 3, 2018. (ECF No. 6.) After Plaintiff responded in opposition (ECF No. 20) and Defendant replied (ECF No. 23), Plaintiff obtained counsel, and was given an opportunity to file a supplemental opposition (*see* ECF No. 29). Plaintiff availed herself of that opportunity (*see* Supp. Opp'n, ECF No. 30) and Defendants have replied to that paper (ECF No. 31). Defendants' motion is therefore fully briefed and ripe for review. There is no need to hold a hearing to resolve the

---

[1] Plaintiff filed this lawsuit on November 6, 2017, when Dennis Schrader was still Acting Secretary of the Maryland Department of Health. The current secretary is Robert R. Neall, but neither party brought this to the attention of the Court or requested to substitute the parties.

matter. *See* Local Rule 105.6 (D. Md. 2016). Plaintiff's complaint fails under Rule 8 to provide a short and plain statement of her claims. Nevertheless, the Court considered her possible claims, including those asserted by her new counsel, and they fail for a variety of reasons, including failure to properly exhaust administrative remedies and because Defendants are immune.

I. *Background*[2]

Plaintiff, a woman of Chinese national origin over sixty years old, began working for CCDPC on November 4, 2009, as an Epidemiologist.[3] Starting in 2010 she was given increased job responsibilities for which she was not compensated properly. She was told she would be promoted, but her HR application process stalled, largely because various supervisors sabotaged that process. Plaintiff reserves most of her complaints for a particular supervisor, Ms. Sara Barry. Ms. Barry promoted a younger, white woman instead of Plaintiff. She often baselessly reprimanded Plaintiff for going outside the chain of command, and prevented Plaintiff from making complaints. Ms. Barry tampered with some type of HR document, an "MS-22," that was supposed to reflect Plaintiff's employment background. Ms. Barry deleted projects from the MS-22 that Plaintiff had worked on, or changed information about Plaintiff's skills in order to set Plaintiff up for failure. Ms. Barry amended Plaintiff's self-evaluations from "outstanding" to "satisfactory" and placed negative material in Plaintiff's HR file, all out of retaliation for Plaintiff's complaints about Ms. Barry. Ms. Barry tried to prevent Plaintiff from receiving an award, mischaracterized Plaintiff's work contributions, and interfered with Plaintiff's access to databases and files.

---

[2] The facts are recited here as alleged by Plaintiff, as this memorandum is evaluating a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).
[3] Plaintiff may have worked at CCDPC in the past, as she wrote in her complaint that she was "reinstated" on November 4, 2009.

2

Plaintiff suffered deteriorating health due the harassment and retaliation she faced at work. She was evaluated by a doctor who worked for the State Medical Director's Office, and he seemed to think that Plaintiff suffered from workplace stress, anxiety disorder, and depression. (*See* Am. Compl. Ex. 28, ECF No. 4-1.)[4] At some point, Plaintiff requested an accommodation for her disability. Plaintiff does not clearly allege what her disability is, but it appears to be essentially workplace stress and anxiety, and her requested accommodation seems to have been not working under Ms. Barry. This accommodation request was denied. Ultimately, Plaintiff was terminated from her position on November 3, 2014.

Plaintiff filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On November 12, 2013, Plaintiff asserted a charge of age and race discrimination. (Am. Compl. pp. 5-6.) Plaintiff was granted a right-to-sue letter fourteen days later, on November 26, 2013. Plaintiff "did not file the lawsuit." (*Id.* p. 6.) Plaintiff filed a second Charge of Discrimination on September 3, 2014. (*Id.* p. 10.) It is unclear from Plaintiff's complaint what the substance of this Charge was. She does not allege that she received a right-to-sue letter.[5]

Plaintiff filed the instant action on November 6, 2017. She named Dennis Schrader, Secretary of the Maryland Department of Health, and David Brinkley, Secretary of the Maryland Department of Budget and Management, as Defendants. (Plaintiff does not allege that she ever

---

[4] Plaintiff alleges that she was examined by *the* State Medical Director and she "was diagnosed with 'workplace stress, major anxiety, major depressive disorder and Post Traumatic Syndrome [sic] Disorder.'" (Am. Compl. p. 9.) But she cited to her workability evaluation, and attached that document to her complaint. That document was prepared by a doctor who worked in the State Medical Director's Office, nowhere seems to "diagnose" Plaintiff with anything, and nowhere mentions "Post Traumatic Syndrome Disorder" (or Post Traumatic Stress Disorder). There is a section for "IMPRESSION" under which he wrote "Workplace stress," "Anxiety disorder," and "Depression."

[5] Plaintiff argues in opposition to Defendants' motion to dismiss that she received a right-to-sue letter, and provides that letter to the Court as an exhibit attached to her opposition. (*See* Opp'n Ex. 1, ECF No. 20-1.) "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). This is true for represented and *pro se* litigants alike. *See Uzoechi v. Wilson*, Civ. No. JKB-16-3975, 2017 WL 3968535, at *1 (D. Md. Sept. 8, 2017) (remanded in part on other grounds) (not considering allegations set forth in a *pro se* litigant's briefing that were not contained in the complaint).

worked for the Maryland Department of Budget and Management). Plaintiff filed her Complaint *pro se* and filed an amended complaint *pro se*. Several months after Defendants moved to dismiss Plaintiff's amended complaint Plaintiff engaged counsel, who then began to represent her. Counsel continues to represent her now, and through that counsel she has filed a supplemental opposition to Defendants' motion to dismiss. Plaintiff has not moved to amend her complaint a second time.

## II. *Standards*

Ultimately, the Court will dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). The standards for reviewing complaints under those rules are as follows:

### a. *Federal Rule of Civil Procedure 8*

The Federal Rules require that a complaint contain a "short and plain statement" of the grounds for the Court's jurisdiction and the claim, and "a demand for the relief sought." Fed. R. Civ. P. 8(a). "Short and plain" means short and plain. The Court does not look for technical forms, magic words, and legal jargon. What matters here is notice: "In general, a pleading must provide the defendant and the court with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson v. Experian Fin. Servs.*, Civ. No. RDB-13-1758, 2014 WL 794360, at *1 (D. Md. Feb. 26, 2014) (internal quotation marks omitted). Courts hold *pro se* litigants "to less stringent standards than trained lawyers," and courts afford a *pro se* complaint a "generous construction." *Engle v. U.S.*, 736 F. Supp. 670, 671 (D. Md. 1989). But "these principles are not without limits." *Id.* at 672. "A plaintiff's status as *pro se* does not absolve her of the duty to plead adequately." *Moore v. Bd. of Educ. of Baltimore Cty.*, Civ. No. RDB-16-3439, 2017 WL 3172820, at *4 (D. Md. July 25, 2017).

4

### b. *Federal Rule of Civil Procedure 12(b)(1)*

The burden of proving subject-matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). At this stage, "it is the court's task to evaluate whether the pleadings allege[ ] facts that affirmatively and plausibly suggest" that the Court has jurisdiction. *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d 905, 907 (D. Md. 2017) (discussing standing). That is, the Court will take all allegations in Plaintiff's complaint as true, and determine whether they are sufficient to establish subject-matter jurisdiction. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d. ed. Apr. 2018 Update) ("A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true.").

### c. *Federal Rule of Civil Procedure 12(b)(6)*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. *Analysis*

Plaintiff's amended complaint will be dismissed for several reasons. It fails to present a short and plain statement of her claims, and therefore fails under Rule 8. Even if the Court reads

Plaintiff's amended complaint according to her current interpretation of it (put forth by her new counsel), her claims still fail for a variety of reasons.

    *a. Rule 8*

Plaintiff's amended complaint is a maze.  It consists of thirteen pages, all single spaced, all underlined.  Its headings present an air of logical form that belies the dizzying allegations contained within—allegations that often reference unexplained persons, unexplained acronyms and unexplained HR forms.  Some allegations proceed in impenetrable run-on sentences.  (For example:

> Yet, in May 2011, Dr. Prince refused to complete the HR required MS-44 and MS-2024 forms with the facts (about the increase of Ms. Yu job duties and changes of the supervision level since 1/2010) insisting on taking the easiest way to give Ms. Yu non-competitive promotion from Epidemiologist I to Epidemiologist II, grade 17, payment step 9, $55,332 in 2011, which she previously mentioned once to Ms. Yu.

(Am. Compl. p. 2)).  Plaintiff's amended complaint contains passing references to statutes and legally relevant events (such as filing Charges of Discrimination), as well as seemingly novel causes of action, like "willful underpayment," and discussion of events of questionable relevance to any claim.  It is a document that perplexes the Court and, more importantly, would leave any defendant largely at a loss as to what he or she was defending against.

Importantly, Plaintiff's errors do not arise only from a lack of legal training.  The problem with Plaintiff's complaint is not that she ineloquently explained the basis for subject-matter jurisdiction or that she fails occasionally to reference a particular section of the United States Code.  Plaintiff's pleading errors arise from a lack of proof-reading, or perhaps some forethought about how to present her claims.  The Federal Rules do not require Plaintiff to put forth a statement filled with legal jargon.  They require a "short and plain" statement.  Plaintiff's complaint is *not* "short and plain."

Plaintiff argues that the Court should overlook her pleading errors because she is *pro se*. That is a curious argument to be made by a Plaintiff who is represented by counsel. To be sure, Plaintiff *was pro se* when she filed this nearly indecipherable complaint. But she is *pro se* no longer. And yet she has not moved the Court to amend her complaint a second time. Her amended complaint, then, exists in a sort of bardo, a state somewhere between a pleading filed by counsel and a pleading filed *pro se*; and it is reviewed in light of that circumstance. *Even if* Plaintiff herself could be excused for her poor presentation, her current counsel cannot piggy-back on Plaintiff's purported ignorance of the pleading rules. Plaintiff's complaint falls short of the pleading standards even for a *pro se* litigant, and far short of the standards for a litigant such as Plaintiff who is not, in fact, *pro se*.[6] Her complaint fails under Federal Rule of Civil Procedure 8(a).

Still, the Court will look past this failure to examine the viability of several claims that Plaintiff argues she has presented in her complaint, as well as the claims Defendants believe she has brought.

### b. *Employment Discrimination Claims*

Plaintiff argues now that she has brought claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") and the Rehabilitation Act. Insofar as she brought these claims, they will be dismissed in part for lack of subject matter jurisdiction due to her failure to allege proper exhaustion of her administrative remedies, and in part because they fail to state a claim upon which relief can be granted.

---

[6] Plaintiff's newly acquired counsel makes arguments that actually enforce the Court's finding that the complaint fails under Rule 8. For example, Plaintiff now argues that she asserted a Rehabilitation Act claim. If that is true, her complaint clearly does not put the Defendants on notice: the words "Rehabilitation Act" do not appear anywhere in Complaint, even though "Title VII," "ADA", and "ADEA" appear multiple times, and Plaintiff was clearly capable of citing to the U.S. Code and naming statutes. (*See* Am. Compl. p. 13.)

"[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The same is true for claims arising under the ADEA, *see id.* at 300-301, as well as the ADA or the Rehabilitation act, *see Snead v. Bd. of Educ. of Prince George's Cty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011). For the purposes of this case there are two important jurisdictional exhaustion requirements that apply to all of these statutes: A plaintiff must first file a Charge of Discrimination with the EEOC, and the EEOC must issue a right-to-sue letter. *Roberts v. Am. Neighborhood Mortg. Acceptance Co.*, Civ. No. JKB-17-0157, 2017 WL 3917011, at *2 (D. Md. Sept. 6, 2017) (citing *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995) (discussing Title VII); *see Snead*, 815 F. Supp. 2d at 894 (exhaustion requirements for ADA and Rehabilitation Act are the same as requirements for Title VII); *Mandengue v. ADT Sec. Sys., Inc.*, Civ. No. ELH-09-3103, 2012 WL 892621, at *25 (D. Md. Mar. 14, 2012) (exhaustion requirements for ADEA are same as for Title VII).[7]

If a plaintiff receives a right-to-sue letter, she has ninety days to file suit. *See*, 42 U.S.C. § 2000e-5(f)(1). Failure to comply with this statutory requirement, however, does not destroy the Court's subject-matter jurisdiction; rather it is "in the nature of a statute-of-limitations defense." *Laber v. Harvey*, 438 F.3d 404, 429 n. 25 (4th Cir. 2006). Thus, if a plaintiff fails to file a claim within ninety days of receiving her right-to-sue letter (and there are not grounds for equitably tolling the clock), her claim will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Roberts*, 2017 WL 3917011, at *3.

---

[7] A court may have subject-matter jurisdiction over a case brought by the EEOC in which the EEOC has not issued a right to sue letter.

Plaintiff alleged that she filed a Charge of Discrimination with the EEOC on September 2, 2014 (the second charge), but she does not allege that she ever received a right-to-sue letter. Whatever claims arise from that Charge of Discrimination will therefore be dismissed for lack of subject-matter jurisdiction.[8] Plaintiff's statutory employment discrimination claims that arise out of her first Charge of Discrimination will be dismissed under Rule 12(b)(6) because Plaintiff did not file suit within ninety days of her receipt of the right-to-sue letter. Plaintiff alleged that she received the right-to-sue letter associated with this Charge on November 26, 2013, and did not file suit until 1,441 days later. Plaintiff's claims based on this Charge of Discrimination are therefore time-barred.

In short, any claim arising from her first Charge of Discrimination was filed too late, any claim arising from her second Charge fails for lack of subject matter jurisdiction (because she does not allege that she received a right-to-sue letter), and any statutory employment discrimination claim (under Title VII, ADA, ADEA, or the Rehabilitation Act) not addressed in either fails for lack of subject matter jurisdiction as well (because she does not allege that she filed any other Charge with the EEOC).

### c. *Tort Claims*

Defendants understood Plaintiff's complaint as asserting, in part, a claim for "Willful underpayment," which they interpret as some form of a tort. Plaintiff, in her supplemental opposition, seems at first to agree. She begins her supplemental opposition stating that she filed a complaint "alleging causes of action of willful underpayment [and] unequal payment . . . ." (Supp. Opp'n at 1.) But then, several pages later, she argues that she did not bring a "willful

---

[8]Again, Plaintiff *argues* that she received a right-to-sue letter, but the Court of Appeals for the Fourth Circuit has "long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite *that must be alleged in a plaintiff's complaint*." *Davis*, 48 F.3d at 140 (emphasis added). Despite Plaintiff's argument that she has received a right-to-sue letter, she has not moved to amend her complaint a second time to make such an allegation, even after obtaining counsel.

underpayment" claim, and that "[u]nderpayment is simply a statement of facts and a claim for damage." (*Id.* at 6.) So, Plaintiff argues that she did not bring a "willful underpayment" tort claim; rather, she alleges that she was willfully underpaid and seeks recourse for that harm. This makes no sense. The Court remains unsure as to whether Plaintiff intends to bring a "willful underpayment" claim (whatever that may be) but will proceed to analyze the viability of such a claim out of an abundance of caution.

Under Maryland law, civil actions must be filed "within three years from the date [they] accrue[] unless another provision of the Code provides a different period of time." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Plaintiff was fired on November 3, 2014. Aside from some cryptic allegations about interference with the EEOC investigation in 2015 and 2017 (*see* Am. Compl. p. 13), a confusing allegation that she "stated" something in 2015 (*see id.* p. 11), and what appear to be some typographical errors,[9] Plaintiff does not allege that her employer acted to her harm her after November 3, 2014. Therefore, regardless of whether Plaintiff intended to bring a tort claim, or what the substance of that tort claim is, such a claim would be barred by Maryland's three year statute of limitations, as she did not file her claim in this Court until three years and three days after November 3, 2014.

### d. Eleventh Amendment Immunity

The Eleventh Amendment generally bars suits by citizens against their own state, including suits such as the one here: a suit by a citizen of the State of Maryland which "is in essence one for the recovery of money from the state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). The only

---

[9] For example, Plaintiff alleged that her "access to office mail was blocked by Ms. Barra on 9/3/2017," but Plaintiff was out of her job almost three years by then. (Am. Compl. p. 10.)

relevant exceptions to this general immunity are when the state has consented to suit, or when Congress has abrogated the immunity.

The State of Maryland has not consented to this suit, and Congress has not abrogated Eleventh Amendment immunity for ADA or ADEA claims. (Plaintiff's assertion that the State has consented by engaging in this litigation or the EEOC process is incorrect. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 622 (2002) (explaining that *voluntary* participation in litigation may constitute a waiver of immunity, but *involuntary* participation does not)). Plaintiff contends that Congress abrogated immunity for claims arising under the Rehabilitation Act when the State accepted certain qualifying federal funds. This contention is doubly misplaced: Plaintiff does not assert a Rehabilitation Act claim, and even if she did, she has not alleged that the State has accepted qualifying federal funds. *See Pickens v. Comcast Cable*, 2015 WL 127822, at *2 (D. Md. Jan. 7, 2015) ("Under the Rehabilitation Act, a plaintiff also must show that the program or activity in question receives federal financial assistance.").

Most troublingly, Plaintiff asserts that Congress abrogated Maryland's Eleventh Amendment immunity for suits under the ADEA, and cites to *Goshtasby v. Board of Trustees of the University of Illinois*, 141 F.3d 761 (7th Cir. 1998) for that proposition. *Goshtasby* is not good law. *Goshtasby*'s holding that the ADEA was a valid use of Congress's 14th amendment enforcement power to abrogate states' Eleventh Amendment immunity was itself abrogated in *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 82-83 (2000).

### e. Miscellaneous claims

Plaintiff references several other claims throughout her amended complaint, particularly on the final page. Neither party addresses these purported claims in their motions papers; to wit, a violation of the Fair Labor Standards Act, violations of 42 U.S.C. §§ 1981 and 1983, and a

11

violation of 29 U.S.C. § 187. If Plaintiff ever intended to bring claims under these statutes, it appears that she has abandoned them, as they are not discussed in her opposition. Even if Plaintiff had not abandoned these claims, they would still fail. Mere reference to a statute at the end of a complaint is insufficient to state a claim. Further, there are problems with these statutory references that suggest Plaintiff was not seriously attempting to bring claims under these statutes. For example, Plaintiff mentions the "Fair Labor Standards Act" but cites to a section of the U.S. Code for the ADA. She nowhere explains what Constitutional violation would underlie a Section 1983 claim. And 29 U.S.C. § 187 makes is unlawful for a labor organization to engage in unfair labor practices as defined in the National Labor Relations Act— Plaintiff barely mentions that she is in a union, let alone alleges sufficient facts to demonstrate an unfair labor practice that she was subjected to by said union (whatever union it may be), or any other prohibited conduct falling under the umbrella of that statute. To the extent Plaintiff has attempted to bring any of these claims, they will be dismissed.

### f. Leave to amend

Plaintiff concludes her supplemental opposition with a request: that she be given leave to file a second amended complaint in the event that her first amended complaint is dismissed. The Court will deny that request for two reasons. First, Plaintiff could have moved to amend her complaint at any time prior to the entry of this order, and chose not to do so, even after acquiring counsel. Nor has she provided the Court with any proposed amendments, "or other indication of the amendments [she] wishes to make." *Estrella v. Wells Fargo Bank, N.A.*, 497 F. App'x 361, 362 (4th Cir. 2012). Under such circumstances, the Court will not grant Plaintiff "a blank authorization to 'do over' [her] complaint." *Id.* (quoting *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009); *cf. Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir.

1993) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (internal citation omitted)).

Second, the Court is not dismissing Plaintiff's amended complaint only under Rule 8. To be sure, when a court dismisses a complaint under Rule 8, such dismissal is usually without prejudice, and the plaintiff will be given leave to amend. *See North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004) (noting that dismissal with prejudice under Rule 8 "is an extreme sanction"). But the Court considered Plaintiff's claims that she now argues are contained in her amended complaint, and has found significant structural problems: she has failed to properly exhaust her administrative remedies and Defendants are immune from many of her claims. A more clear and concise version of Plaintiff's amended complaint would not cure these defects. *See Laber*, 438 F.3d at 426 (leave to amend under Rule 15(a) should be denied when the proposed amendments would be futile).

### IV. *Conclusion*

Plaintiff's amended complaint fails under Rule 8, in part under Rule 12(b)(1), and in part under Rule 12(b)(6). Accordingly, Defendants' motion to dismiss will be granted by accompanying order, and the Clerk will be directed to close the case. An order shall issue setting forth this disposition.

DATED this 26th day of June, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge